12 CIV 4614

**Zatuchni & Associates, LLC**
1 West Street
Suite 100
New York, NY 10004
(212) 785-8980
Attorneys for Plaintiff
DZ-2516

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN MCDONNELL, <br><br> Plaintiff, <br><br> v. <br><br> SCHINDLER ELEVATOR CORPORATION; and JERRY SPAMPANATO, <br><br> Defendants. | CIVIL ACTION NO: <br><br><br> **COMPLAINT AND JURY DEMAND** |

## COMPLAINT

Plaintiff John McDonnell, by way of Complaint against Defendants Schindler Elevator Corporation and Gerry Spampanato, hereby states and alleges as follows:

## PARTIES

1.   Plaintiff John McDonnell is a natural person residing at 51-1 South Bath Avenue, Long Branch, New Jersey. Mr. McDonnell is a thirty-three (33)-year member of the Local No. 1 International Union of Elevator Constructors and holds the title of Journeyman. Since 1989, Mr. McDonnell worked exclusively for Schindler Elevator Corporation in various buildings throughout Manhattan, New York, until his unlawful termination in September 2011.

2.   Defendant Schindler Elevator Corporation is a global manufacturer of elevators, escalators, and moving walks, which designs, installs, services and modernizes all related equipment. Schindler services dozens of building in and around Manhattan, New York, and

contracts through Local No. 1 International Union of Elevator Constructors for its service workers. Defendant Schindler maintains offices at 620 12th Avenue, 4th Floor, New York, New York, 10036-1004.

3. Jerry Spampanato was, at all times relevant to the allegations contained within this Complaint, a Manager at Schindler Elevator Corporation in Mahattan, New York. Defendant Spamanato was directly responsible for Mr. McDonnell's job placement and assignments. Upon information and belief, Defendant Spampanato resides at 381 Bellmore Rd, East Meadow, NY 11554-4350

## JURISDICTION AND VENUE

4. Plaintiff is a resident of New Jersey. Defendants are residents of New York. The amount in controversy in this matter exceeds One Hundred Thousand ($100,000.00) Dollars. Accordingly, this court has diversity jurisdiction pursuant 28 U.S.C. § 1332.

5. This matter is also brought pursuant 42 U.S.C. § 12111 *et seq.*, otherwise known as the Americans with Disabilities Act of 1990. This court has original jurisdiction pursuant to 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. §1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all of the acts and omissions complained of occurred in the State of New York within the Southern District.

8. The Plaintiff filed a Charge with the Equal Employment Opportunity Commission on November 21, 2011.

9. The Plaintiff received a Right to Sue letter dated April 17, 2012.

10. This action has been commenced within ninety (90) days of receipt of the Right to Sue.

11. The Plaintiff has complied with all jurisdictional prerequisites for commencing this action.

## BACKGROUND FACTS

12. Mr. McDonnell is an experienced and seasoned Journeyman, who has been a member of the Local No. 1 Elevator Constructors Union since 1978.

13. As a Journeyman, Mr. McDonnell is classified as a service employee, as he is responsible for routine elevator maintenance and repair.

14. In 1978, Mr. McDonnell was placed with Westinghouse, whereby he worked primarily on Westinghouse elevators in and around Manhattan, New York. In or around 1989, Schindler Elevator Corporation ("Schindler") purchased Westinghouse, and from that point forward, Mr. McDonnell served as a Journeyman exclusively for Schindler.

15. Throughout the entirety of his employment with Schindler, Mr. McDonnell performed his work diligently and with the utmost care. He was never formally reprimanded or disciplined.

16. For more than twenty (20) years, Mr. McDonnell performed his job duties without incident. However, on April 13, 2010, while conducting a complicated safety test, for which he had not been given training and which he was performing without assistance, Mr. McDonnell severely injured his left knee.

17. Mr. McDonnell was removed from work the following day upon his examination by an orthopedist. He was diagnosed with torn medial cartilage, chondromalacia of the patella and effusion of the lower leg joint.

18. For the next two months, Mr. McDonnell remained out of work and under the care of an orthopedist. On June 14, 2010, he received reparative surgery, and continued his rehabilitative treatment through August 22, 2010.

19. Thereafter, Mr. McDonnell filed a Workers' Compensation Claim against Schindler.

20. On August 23, 2010, Mr. McDonnell was released back to work by his treating physician with the limitation that he perform only light duty jobs.

21. Initially, Schindler complied with this requirement, and generally assigned Mr. McDonnell to various tasks, such as warehouse work and deliveries. However, on certain occasions, Schindler managers requested that Mr. McDonnell perform tasks that he was physically unable to perform, such as power washing escalator steps. Mr. McDonnell reported these incidents to Fred McCourt, a Business Agent with the Union, who in turn reported them to Gerry Spampanato, a Manager at Schindler. Despite the clearly inappropriate nature of these assignments, Mr. Spampanato found nothing wrong with the requests.

22. In November 2010, Mr. Spampanato refused to continue providing Mr. McDonnell with light duty assignments, and Mr. McDonnell was once again forced to leave his position, as his treating physician had not yet cleared him for full duty.

23. Mr. McDonnell was then returned to work on or around December 15, 2010, when he was released back to full duty.

24. Upon his return to work, Joseph Postestivo, a Supervisor at Schindler, assigned Mr. McDonnell to 55 Broadway, a building that required an established, experienced Journeyman, such as Mr. McDonnell. Mr. McDonnell reported as he was instructed. However, the following day, Mr. Spampanato removed Mr. McDonnell from 55 Broadway for no given reason.

4

25. Thereafter, Mr. Spampanato assigned Mr. McDonnell out to escalator duty, a physically demanding job for which he had not been trained. This position required Mr. McDonnell to be on his knees seventy-five (75) percent of his work day. Although he was released to full duty as a Journeyman performing elevator work, he was <u>not</u> cleared to spend the majority of his days performing jobs that severely taxed and strained his damaged knee.

26. Mr. McDonnell was able to perform escalator duty for approximately two and one half weeks, but it eventually became too painful and he was forced to stop. Mr. McDonnell informed Steve Penn that he was physically unable to do escalator duty.

27. The following day, Mr. Spampanato took Mr. McDonnell off of escalator duty but failed to assign him to another permanent position. Instead, he assigned Mr. McDonnell to temporary assignments, random testing, and vacation coverage.

28. During the summer of 2011, Mr. Spampanato ensured that Mr. McDonnell was assigned <u>only</u> to temporary vacation coverage and never given a permanent assignment, despite Mr. McDonnell's ability to work on a wide variety of elevators, particularly older models, and regardless of the quality and caliber of Mr. McDonnell's work product. By failing to give Mr. McDonnell was never given a permanent assignment, Mr. Spampanato effectively made him into a throw-away employee.

29. In July 2011, Mr. McDonnell's Workers' Compensation Claim was finalized and an award was entered against Schindler.

30. On September 12, 2011, Mr. McDonnell went into work, but did not yet have an assignment for that day. Upon his arrival to World Wide Plaza to receive his assignment, Mr. McDonnell was met by John Souter, a Supervisor at Schindler, and another supervisor. Mr. Souter informed Mr. McDonnell that he was laid off due to "lack of work." This reason was blatantly false and patently pretextual.

5

31.     In fact, there were permanent assignments available for Journeyman with Mr. McDonnell's skill set. Specifically, World Wide Plaza was in need of two (2) Journeymen to work on several elevator units that were being modernized. When management representatives from Schindler asked John Milne, the main Journeyman at World Wide Plaza, who he would prefer to have fill one of the open Journeyman positions, Mr. Milne specifically stated that Mr. McDonnell would be the best candidate for the position because he had the required experience and skill set, and had previously provided vacation coverage at that site. Mr. Milne informed Mr. Budnick, a Supervisor with Schindler that he wanted Mr. McDonnell placed there; however, when Mr. Budnick raised the idea with Mr. Spampanato, he replied, "No way, that's not happening." (paraphrased).

32.     Further, Mr. McDonnell was the **only** Journeyman that Schindler laid off, as service members are rarely terminated because there is always service work to be performed on elevators in Manhattan.

33.     Following his lay off, the Union kept Mr. McDonnell at the top of their employment list, as he was the most senior member. On several occasions, the Union offered Mr. McDonnell to Schindler as an available Journeyman for various assignments; however, each time Schindler refused to place him.

34.     In or around December 2011, the Union was forced to remove Mr. McDonnell from the employment list, as it had essentially been stalled from all movement because Schindler refused to place him.

35.     Schindler effectively terminated Mr. McDonnell in September 2011 due to his disability, and in violation of Federal law.

### COUNT I – TERMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
(as to Defendant Schindler Elevator Corporation)

6

36.  Plaintiff hereby incorporates and restates the allegations contained in the preceding Paragraphs as set forth at length herein.

37.  Defendant terminated Mr. McDonnell's employment because of his physical disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. (ADA).

38.  As a result of Defendant's unlawful conduct, Mr. McDonnell has been subjected to job detriment and economic losses.

39.  As a result of Defendant's unlawful conduct, Mr. McDonnell has been subjected to mental anguish, embarrassment, stress, anxiety, and humiliation.

**WHEREFORE**, Plaintiff demands the following damages and relief:

a.  Judgment in favor of the plaintiff and against the defendant;

b.  Compensatory damages;

c.  Punitive damages;

d.  Reinstatement;

e.  Attorneys fees;

f.  Costs of suit;

g.  Such additional relief as this Court deems just and equitable.

## COUNT II – DISABILITY DISCRIMINATION IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
**(as to Defendant Schindler Elevator Corporation)**

40.  Plaintiff hereby incorporates and restates each of the allegations set forth in the preceding paragraphs as if set forth at length herein.

41.  Defendant terminated Mr. McDonnell solely due to his physical disability, in violation of New York State Human Rights Law § 296 et seq.

7

42. As a result of Defendant's unlawful conduct, Mr. McDonnell has suffered substantial economic losses.

43. As a result of Defendant's unlawful conduct, Mr. McDonnell has suffered and will continue to suffer extreme mental anguish, embarrassment, stress, anxiety, humiliation and other pain and suffering.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

    a. Judgment in favor of the plaintiff and against the defendant;

    b. Compensatory damages;

    c. Punitive damages;

    d. Reinstatement;

    e. Attorneys fees;

    f. Costs of suit;

    g. Such additional relief as this Court deems just and equitable.

## COUNT III – AIDER AND ABETTOR LIABILITY IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
### (As to Defendant Spampanato)

44. Plaintiff hereby incorporates and restates the allegations contained in the preceding Paragraphs as if set forth at length herein.

45. Defendant Spampanato, Mr. McDonnell's superior, affirmatively engaged in disability discrimination against Plaintiff and substantially assisted the Defendant and encouraged the Defendant in its discriminatory treatment of Plaintiff.

46. Defendant acted unlawfully in aiding and abetting discrimination against Plaintiff in violation of the New York State Human Rights Law § 296 et seq.

47. Defendant's unlawful and discriminatory conduct has caused and continues to cause Mr. McDonnell severe mental anguish, embarrassment, stress, anxiety, humiliation and other pain and suffering.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

    a. Judgment in favor of the plaintiff and against the defendant;

    b. Compensatory damages;

    c. Punitive damages;

    d. Reinstatement;

    e. Attorneys fees;

    f. Costs of suit;

    h. Such additional relief as this Court deems just and equitable.

### COUNT IV –DISABILITY DISCRIMINATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW
#### (as to Defendant Schindler Elevator Corporation)

48. Plaintiff hereby incorporates and restates each of the allegations set forth in the preceding paragraphs as if set forth at length herein.

49. Defendant terminated Mr. McDonnell solely due to his physical disability, in violation of the New York City Human Rights Law § 8-107 et seq.

50. As a result of Defendant's unlawful conduct, Mr. McDonnell has suffered substantial economic losses.

51. As a result of Defendant's unlawful conduct, Mr. McDonnell has been subjected to and continues to be subjected to mental anguish, embarrassment, stress, anxiety, humiliation and other pain and suffering.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

    a. Judgment in favor of the plaintiff and against the defendant;

    b.    Compensatory damages;

    c.    Punitive damages;

    d.    Reinstatement;

    e.    Attorneys fees;

    f.    Costs of suit;

    g,    Such additional relief as this Court deems just and equitable.

## COUNT V – AIDER AND ABETTOR LIABILITY IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW
### (As to Defendant Spampanato)

52. Plaintiff hereby incorporates and restates the allegations contained in the preceding Paragraphs as if set forth at length herein.

53. Defendant Spampanato, Mr. McDonnell's superior, affirmatively engaged in disability discrimination against Plaintiff and substantially assisted the Defendant and encouraged the Defendant in its discriminatory treatment of Plaintiff.

54. Defendant acted unlawfully in aiding and abetting discrimination against the Plaintiff in violation of the New York City Human Rights Law § 8-107 et seq.

55. As a result of Defendant's unlawful conduct, Mr. McDonnell has suffered substantial economic losses.

56. Defendant's unlawful and discriminatory conduct has caused and continues to cause Mr. McDonnell severe mental anguish, embarrassment, stress, anxiety, humiliation and other pain and suffering.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

    a.    Judgment in favor of the plaintiff and against the defendant;

    b.    Compensatory damages;

    c.    Punitive damages;

        d.      Reinstatement;

        e.      Attorneys fees;

        f.      Costs of suit;

        g,      Such additional relief as this Court deems just and equitable.

Respectfully submitted,

_____
David Zatuchni, Esq.
Zatuchni & Associates, LLC
1 West Street
Suite 100
New York, NY 10004
DZ-2516
(212) 785-8980
Attorneys for Plaintiff

Dated: 6/5/12

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

_____
David Zatuchni, Esq.
Zatuchni & Associates, LLC
1 West Street
Suite 100
New York, NY 10004
DZ-2516
(212) 785-8980
Attorneys for Plaintiff

Dated: 6/5/12

11

## CERTIFICATION PURSUANT TO FED.R.CIV.PRO. 11.2

I certify that the above matter in controversy is not now known by me to be the subject of any other proceeding in any other Court or of a pending arbitration proceeding; and that, to the best of my knowledge, no such actions or proceedings are contemplated; and that Plaintiff knows of no other person who should be joined in this action at this time.

David Zatuchni, Esq.
Zatuchni & Associates, LLC
1 West Street
Suite 100
New York, NY 10004
DZ-2516
(212) 785-8980
Attorneys for Plaintiff

Dated: 6/5/12